530

## GOODMAN, Appellant, v. EVATT, Tax Commr., Appellee.

### Board of Tax Appeals.

No. 5744. Decided July 14, 1944.

Waite, Schindel and Bayless, Cincinnati, on behalf of the appellant.

Thomas J. Herbert, Atty. Genl., of Ohio and Aubrey A. Wendt, Asst. Atty. Genl., Columbus, on behalf of the appellee.

### ENTRY

This cause came on to be heard on the appeal of Lefreda Weir Goodman from the action of the tax commissioner in denying her application for review and redetermination of the personal property tax assessment made against her for the tax year 1941. The cause was submitted and heard upon the transcript of the proceedings of the tax commissioner, the stipulation of facts, the evidence and briefs of counsel. Appellant in her return for the year 1941, listed as income yield from a trust of which she was one of the beneficiaries, the sum of $19,467.48 while the amount of the assessment made by the tax commissioner with respect to this item was based on $31,810.79. The stipulation shows that on February 23, 1926, one Emma Weir Ysebrant de Lendonck created a revocable living trust, becoming irrevocable upon the death

of the creator. Upon her death in 1928 The Guaranty Trust Company of New York, which was the trustee during her life, Oliver DeGray Vanderbilt, Jr., and Timothy Seymour Goodman became the trustees of said trust, the beneficiaries being her two daughters, one of which is the appellant. When the trust was created the corpus consisted of 1334 shares of Weir Frog Company common stock and 3319 shares of its 7% cumulative preferred stock, par value $100.00, with the accumulated unpaid dividends thereon. Of the preferred stock 2714 shares are still held by the trustees. In 1925 the Weir Frog Company changed its name to Weir-Kilby Corporation. The articles of incorporation provide as follows with reference to preferred stock:

"The preferred stock shall be entitled to dividends at the rate of seven per cent per annum, payable out of the surplus profits of the company each year in preference to the common stock, and said dividends shall be cumulative. The preferred stock shall not be entitled to any dividends in excess of said seven per cent and the arrears thereof. In case of the insolvency or dissolution of the corporation, the holders of the preferred stock shall be entitled to receive from the assets remaining after paying its debts and liabilities, the full payment of the par value of the stock and any arrears in dividends before anything is paid to the common stock."

For many years said company was delinquent in the payment of dividends on its preferred stock and in 1921 and from time to time since then it declared and paid additional dividends from accumulated surplus to apply on said arrearage until 1940, in which year it declared and paid additional dividends sufficient to pay in full the balance due on account of unpaid dividends accumulations. In her return the appellant failed to list her share of additional dividends which the trustees received during the year 1940; and it is for this reason that the tax commissioner made his assessment based on $31,810.79 and not on $19,467.48 as returned by appellant. The following is included in the stipulation:

"The Guaranty Trust Company of New York, Oliver DeGray Vanderbilt, Junior, and Timothy Seymour Goodman have refused and now refused to pay to the beneficiaries of the trust any part or all of the amount received and held by them on account of the total delinquent unpaid dividend accumulations on the preferred stock, on the alleged ground

that said sum of $188,623.00, or $69.50 per preferred share is, under the laws of the State of New York, a part of the corpus of the trust the same as the value of the preferred shares is a part of the corpus of the trust. There is no fraudulent intention to withhold the said sum from the beneficiaries, and such withholding is done in good faith. There is no collusion between the life tenants and trustees, nor is there any intention by them or any of them to evade any taxes thereon lawfully due the State of Ohio."

The evidence further shows that the trustees credited such extra dividends to the corpus of the trust.

The sole question in this case is this: Do dividends on preferred stock which are declared and paid to a trustee in addition to regular dividends to apply on the amount of delinquent unpaid dividends, and which the trustee refuses to pay to the beneficiaries on the ground that such extra dividends become a part of the corpus of the trust and so credits them, constitute income yield which is taxable against such cestuis que trustent? The uses and purposes of the trust include the following:

"To collect and receive the dividends, interest and income from the principal or investments of the within trust (hereinafter referred to as 'income') (sic) and to pay the net income therefrom after deducting all proper charges and expenses, unto the Grantor or her assigns during all the term of her natural life, and at and immediately upon the death of the said Grantor to divide the principal fund into two equal and separate parts or shares and thereafter hold the same for the following uses and purposes:

"(A) to hold such equal parts or shares in trust for the benefit of Lefreda Weir Goodman and Madelon Weir Vanderbilt, daughters of the Grantor (hereinafter referred to as the daughters) and to pay the net income therefrom in quarterly instalments unto each of them during the term of their respective lives and at and immediately upon the death of either of my said daughters to pay over and transfer the entire principal fund set aside and held in trust for the daughter so dying, together with any and all accrued or accumulated income, unto the issue of the daughter so dying, per stirpes and not per capita, free, clear and discharged of all trusts. In the event, and in this event only, of either of my said daughters dying without leaving issue her surviving, then the principal fund so set aside for the daughter so dy-

ing, shall be held in trust by my said Trustees under the like uses and purposes as herein set forth, for the benefit of my surviving daughter and upon the death of my said surviving daughter, then to pay over and transfer all of the principal sum so set aside and then held for her benefit together with any accrued or accumulated income unto her issue, per stirpes and not per capita free, clear and discharged of all trusts."

Both of said beneficiaries are living and have children. **Sec. 5388 GC** of Ohio reads in part as follows:

"In listing investments, the amount of the income yield of each for the calendar year next preceding the date of listing shall, excepting as otherwise provided in this chapter, be stated in dollars and cents and the assessment thereof shall be at the amount of such income yield;"

**Sec. 5389 GC** provides:

" 'Income yield' as used in §5388 GC and elsewhere in this title means the aggregate amount paid as income by the obligor, trustee or other source of payment to the owner or owners, or holder or holders of an investment, whether including the taxpayer or not, during such year, and includes the following: * * *

"* * * in the case of shares of stock, the dividends so paid or distributed, other than distributions in liquidation, whether such payment or distribution is in cash, notes, debentures, bonds, other property or shares of stock, excepting stock of like kind and character of the corporation declaring the dividend;

"* * * in the case of an equitable interest in a fund made up in whole or in part of investments, the entire distribution of income by the trustee to the owner of the equitable interest to the extent represented by the net income received by the trustee from investments,* * *"

**Sec. 5389-1 GC** contains the following provision:

"Income shall be considered to be distributed in cash though it is applied by the trustee to the use of the taxpayer, or used by the trustee in paying premiums on policies of insurance on the taxpayer's life, or of which he is a beneficiary."

**Sec. 5389-2 GC** provides as follows:

534

"Whenever, during a calendar year, a corporation is dissolved or merged into or consolidated with another corporation or its capital stock or the number of shares thereof is either increased or reduced, and a stockholder of such corporation surrenders his shares and receives in lieu thereof other shares of stock of the same or another corporation, such stockholder, in listing the shares so received as productive investments, shall give as the income yield thereof the aggregate amount of cash dividends paid during such year on and with respect to the shares so surrendered and the shares so received."

It is seen that to be income yield the income must be paid. In the case of shares of stocks the dividends must be paid or **distributed.** Also, in the case of an equitable interest in a fund made up of investments, for the income to be income yield there must be a **distribution** thereof to the owner of the interest. Likewise, under §5389-2 GC, the income yield is the aggregate amount of cash payments **paid.** Can the income in question be considered to have been paid or distributed to the appellant in the year 1940? All through these statutes the legislature used the words "paid", "distribute" and "distribution". Considering the plain ordinary meaning of these words, the legislature must be deemed to have intended that there must be actual delivery to and receipt by the beneficiary to constitute income yield. Where the words of the statute are plain, explicit and unequivocable a court is without authority to construe the same and is not warranted from departing from their obvious meaning. **Railway v Naylor, 73 Oh St 115; Scheu v State, 83 Oh St 146; Sipe v State ex rel., Mansfield, 86 Oh St 80; Brewing Company v Schultz, Treas., 96 Oh St 27.** A statute must be given the meaning and effect required by the plain and ordinary signification of the words used. **Marqua v Martin, 109 Oh St 56.** As stated in **Wick v Sheet & Tube Company, 46 Oh Ap 253:**

"Usual, ordinary meaning of words should be held to be intention of legislature in enacting statute."

If constructive distribution would be sufficient it would have been unnecessary to say in §5389-1 GC:

"Income shall be considered to be ·distributed in cash though it is applied by the trustee to the use of the taxpayer,

or used by the trustee in paying premiums on policies of insurance on the taxpayer's life, or of which he is a beneficiary."

Income used by the trustee in these ways certainly would constitute constructive distribution. In the case of **Spragg v Prudential Insurance Company of America, 50 Oh Ap 451,** in which a motion to certify was overruled by the Supreme Court, an insurance policy issued in pursuance of an application therefor had been brought to the deceased and exhibited to him. He desired to credit the indebtedness due him from the company in part payment of the first premium, to which the company objected. Later he tendered to the company the full amount of the premium and demanded the policy. The company then refused to give it to him and a few weeks later he died. The policy contained a provision that it was not to take effect until received by him. The plaintiff contended that there was a constructive receipt of the policy. The court held:

"The tender of payment of the first premium, in so far as the taking effect of the policy is concerned, does not operate as a constructive receipt of the policy by the applicant."

The Internal Revenue Laws, with reference to Federal income taxes, have used the words "received", "distributed", and "distributable". Wherever the word received or distributed was used the courts have uniformly held that those words meant that to be taxable the income must have been actually reveived by or distributed to the taxpayer, but where the word distributable was used that meant the present right to receive it. Since the tax on investments in this state is based on income yield these authorities would be applicable. "A dividend actually paid and received by stockholders in 1919 held, under Rev. Act 1918 Sec. 213 taxable as 'income' of that year, though by decision of the state courts, previously rendered in litigation respecting it, the dividend should have been paid in a prior year when a different statute was in force." Kales v Woodworth, 20 Fed. (2d) 395; Writ of Certiorari denied, 280 U. S. 570, 74 L. Ed. 623. The word distribution was construed to mean distribution actually made in Lewellyn v Harlison, 31 Fed. (2d) 740; Writ of Certiorari denied, 280 U. S. 560, 74 L. Ed. 615. Under the act providing for taxation on income "for the taxable year in which received", the court held in Commissioner of Internal Revenue v Adams, 54 Fed. (2d) 228, that this language was ambiguous and that a dividend author-

ized on December 31, 1924, and received by check the following January 2 was not 1924 taxable income. It is also held in Hines v U. S., 90 Fed. (2d) 957; Writ of Certiorari denied, 302 U. S. 756, 82 L. Ed. 584, that a cash dividend cannot be charged as income to the taxpayer until actually received. Where a personal holding corporation on a cash basis declared a dividend one day before the close of its fiscal year, but its sole stockholder, who alone had authority to pay out funds, was not informed of the dividend until after the close of such year, when he received it, it was held that the dividend was not paid during the taxable year. Sanford Corporation v Commissioner of Internal Revenue, 106 Fed. (2d) 882; Writ of Certiorari denied, 309 U. S. 659, 84 L. Ed. 1007. The court said, "It will be observed that in both the undistributed profits surtax, and the one under consideration, the dividends credit provision employs the word 'paid'. To relieve from the tax under the circumstances of the case at bar, it is necessary to interpret the verb against its literal meaning by adding thereto the adverb constructively. Generally speaking, any extension of the unreal doctrine of attaching consequences by the fiction of a constructive something or other (abandonment, contempt, delivery, eviction, notice, possession, seizure, service or trusts, for instance) is embarrassing to a proper development of the law." In the case of Helvering v Horst, 311 U. S. 12, 85 L. Ed. 75, the court said:

"Ordinarily, a taxpayer who acquires the right to receive such income is taxed on such income when he receives it, regardless of the time when his right to receive payment accrues; but that does not mean that a taxpayer, even on the cash receipts basis, who has fully enjoyed the benefit of the economic gain represented by his right to receive income, can escape taxation because he has not himself received payment of it from his obligor."

Of course, in the case here the appellant has received no benefit from the income which was received by the trustees. And in the case of Avery v Commissioner of Internal Revenue, 292 U. S. 210, 78 L. Ed. 1216, the court held:

"Dividends to a stockholder accounting on a cash basis are not part of his taxable income for the accounting period in which they were declared and made payable where checks therefor were not permitted to reach stockholders until the first business day of the next accounting period."

On the other hand, under a statute using the term "distributable", the court in the case of Freuler v Helvering, 291 U. S. 35, 78 L. Ed. 634, held that the income of a trust was taxable for the taxable year in which the taxpayer had the present right to receive it, whether actually distributed or not. The Attorney General cites authorities in support of his contention that as a matter of law these dividends did not become a part of the corpus of the trust and that the appellant was lawfully entitled to them in 1940 and, therefore, were constructively distributed to her. That contention that she was lawfully entitled to them may be sound and if it were raised in court as to the dividends in question the court would probably hold that the beneficiaries were entitled to such income on the next date for payment after the receipt thereof by the trustees, as required by the instrument creating the trust. However, this Board has no authority to determine that question in this cause in view of the plain language of the statutes. If the legislature had used the words "distributable" to or "entitled to be received" by the taxpayer or "accrued" we might have a different situation; but even if constructive distribution would be sufficient, the Board does not feel that the facts in this case constitute constructive distribution. The trustees refused to pay this income to the beneficiaries. They apparently did not wish to take any chance without a court decision, of being held liable to the remaindermen for money unlawfully paid to the present beneficiaries. The beneficiaries had absolutely no control over the dividends nor were said dividends unqualifiedly subject to their demands. It is conceded that there was no fraud or collusion between the trustees and the beneficiaries, and that the trustees acted in good faith and with no intention to evade payment of any lawful tax. In the construction of the statutes here involved, the Board followed, as it was bound to do, the rule of construction of taxing statutes as laid down by the Supreme Court. In the case of **Watson v Tax Commission, 135 Oh St 377,** the court held:

"In the construction and application of taxing statutes, their provisions cannot be extended by implication beyond the clear import of the language used; nor can their operation be so enlarged as to embrace subjects not specifically enumerated. A strict construction is required and any doubt must be resolved in favor of the citizen upon whom or the property upon which the burden is sought to be imposed."

538

The Board, therefore, finds that under the facts in this case the dividends in question were not paid or distributed to the appellant in the year 1940 and, consequently, do not constitute income yield for that year within the meaning of §5389 GC.

It is, therefore, considered and adjudged by this Board that the action of the tax commissioner herein complained of be, and the same hereby is, reversed.